CHESTER ADDISON JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50206. Promulgated August 9, 1934.

*Eustis Myres, Esq.*, and *J. D. Anderson, C.P.A.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

OPINION.

ADAMS: This proceeding involves proposed deficiencies in income taxes for the calendar year 1927 in the amount of $11,738.54, and for the calendar year 1928 in the amount of $4,415.91.

Petitioner alleges that the respondent erred (a) in failing to compute the tax on income for 1927 on the basis of separate returns for

petitioner and his wife; (b) in failing to allow as a deduction from gross income for the year 1927 traveling expenses in the amount of $4,774.90; and (c) in failing to allow as a deduction from gross income for the year 1927 depletion upon the sale of producing oil property and payments for oil at the rate of 27½ percent. Petitioner has introduced no evidence relative to the proposed deficiency for 1928, and the respondent's determination for that year is approved. At the hearing petitioner waived his assignment of error for failure to allow a deduction of $4,774.90 for traveling expenses for 1927.

This leaves for our consideration (1) the question of whether petitioner was entitled to have his income computed on the basis of a separate return or a joint return for himself and wife; and (2) the question as to whether he has a right to depletion. Both of these questions refer to the year 1927.

The petitioner was a married man, a resident of the State of Texas, where the law recognizes community property between husband and wife. During the year 1927 petitioner and his wife separated and on July 28, 1927, entered into a separation agreement and marriage settlement which provided a division of their community property interests. This agreement is included herein by reference. By the terms of this agreement certain real property was transferred to petitioner's wife and petitioner agreed to pay her $20,000 ($15,000 in cash and $5,000 within six months). Petitioner's wife conveyed to him all her " right, title, claim and demand " in and to all other property owned or possessed by him. It was further provided:

That from and after the execution of this agreement that neither of the parties hereto shall have any right, claim or demand to any property acquired by the other, and that the property herein and above conveyed to the said Mrs. C. A. Jones shall be her separate property and any other property acquired by her shall be her separate property, and the rents and revenues to be derived therefrom shall be her separate property, and that all the property now owned and that may hereafter be acquired by the said C. A. Jones shall be his separate property; it being our intention that from and after this date, that neither of the parties hereto shall have claim or demand any interest in or to any property of the other, and that neither party hereto shall participate in any way in the management, control, sale or disposition of the respective properties so owned by us. * * *

This partition agreement is made with the further agreement and understanding that the property hereinbefore set apart to Mrs. C. A. Jones is situated in Eastland County, Texas, and that the property set apart to C. A. Jones consists mostly of personal property and is situated in the oil fields of western Texas, and while the same is not itemized herein, it includes all the automobiles, trucks and machinery, notes and accounts, as well as any money that he may have on hand, and that from and after this date the said Mrs. C. A. Jones shall have no interest therein, and C. A. Jones shall handle same independent of the said Mrs. C. A. Jones, and that the property set apart to Mrs. C. A. Jones as above described shall be hers and managed and disposed

of by her, and in addition thereto the said C. A. Jones also disclaims any interest in and to her personal property, such as her automobile, household goods, diamonds and wearing apparel. * * *

Petitioner and his wife have not lived together since their separation agreement of July 28, 1927, and were not living together on December 31, 1927. On November 19, 1928, they were divorced by a judgment of the District Court of Eastland County, Texas, which further ordered, adjudged, and decreed that the marriage settlement of July 28, 1927, be affirmed and binding on the parties. In the settlement of the divorce proceeding, petitioner was required to pay to his wife an additional sum of $2,500 and the costs of the action.

Prior to March 10, 1927, the petitioner and others were owners of the oil and gas rights on certain lands in Crane County, Texas. On that date they entered into a contract, included herein by reference, with certain other parties, which provided, among other things, for the assignment by the petitioner and others of all their right, title, and interest in and to the oil and gas rights on these lands. It further provided that the transferees should take over the operation and continue the drilling of a well on the property and pay certain obligations incurred by the petitioner and his associates and do additional prospecting and drilling.

In consideration for such assignment and transfer, petitioner and his associates received the sum of $110,000, of which the petitioner received $50,000 ($40,000 in cash and $10,000 in Texon stock).

It was further provided that if oil in commercial quantities was produced from the well, out of seven eighths of the first oil produced the purchasers should retain for their exclusive benefit the sum of $160,000 derived from the sale of the oil, and then:

* * * as soon as, but not before, the parties of the third part shall have received from the gross sales of seven-eighths (7/8) of said oil, the sum of one hundred sixty thousand ($160,000.00) Dollars, as hereinabove provided, then and in such event only, the parties of the third part agree to pay to the parties of the first part one-half of seven-eighths (7/8) of the proceeds of the sale of the next oil produced from said lands if, as and when said oil is sold and paid for, until the parties of the first part shall receive the sum of one hundred ninety-two thousand five hundred ($192,500.00) Dollars (being eleven-sixteenths of $280,000.00) to be pro-rated among the parties of the first part as follows:

Five-Elevenths (5/11) thereof amounting to $87,500.00 to C. A. Jones

Four-Elevenths (4/11) thereof amounting to $70,000.00 to Clayton W. Williams

Two-Elevenths (2/11) thereof amounting to $35,000.00 to Roscoe Copen

Payment shall be made by the parties of the third part directly to the parties of the first part, in the proportions above set forth, on the tenth day of the month for oil sold and paid for during the last half of the preceding month and on the twenty-fifth day of the month for all oil sold and paid for during the first fifteen days of the month.

Petitioner in his income tax return for the year 1927 included $40,000 from the cash consideration and $27,372.11 from the oil payments. He deducted from his return as an amount paid Mrs. C. A. Jones from income of the sale the sum of $22,000.

In making out his return for the taxable year 1927 on Form 1040, petitioner answered the printed interrogations thereon as follows:

1. Are you a citizen or resident of the United States? *Yes.*
2. If you filed a return for 1926, to what Collector's Office was it sent? *Dallas, Texas.*
3. Is this a joint return of husband and wife? *No.*
4. State name of husband or wife if a separate return was made and the Collector's office where it was sent. *None.*
5. Were you married and living with husband or wife on the last day of your taxable year? *No.*
6. If not, were you on the last day of your taxable year supporting one or more persons living in your household who are closely related to you? *Yes.*
7. If your status in respect to questions 5 and 6 changed during the year, state date and nature of change. *Separated from wife.*
8. How many dependent persons (other than husband or wife) under 18 years of age or incapable of self-support because mentally or physically defective were receiving their chief support from you on the last day of your taxable year? *Two.*

The respondent contends that the return was a joint return for both husband and wife and that petitioner, having elected to file a joint return, cannot now claim a return on a separate basis. The petitioner urges that he filed an individual income tax return for the calendar year 1927. He admits in his brief that the method used in arriving at his part of the community income was erroneous and now contends that to correct the same the total community net income for the taxable year should be equally divided between himself and wife and taxed to them accordingly.

From the applicable statutes and regulations, it appears that a husband and wife may elect to file a joint return only when they were living together at the close of the taxable year.

Section 223 of the Revenue Act of 1926 provides:

(b) If a husband and wife living together have an aggregate net income for the taxable year of $3,500 or over, or an aggregate gross income for such year of $5,000 or over—

(1) Each shall make such a return, or

(2) The net income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income.

Regulations 69, article 401, provides that a joint return of husband and wife may be filed only if they are living together at the close of the taxable year.

Since petitioner and his wife were not living together at the close of the taxable year, they could not file a joint return, but each was **required** to file an individual return. That petitioner intended to do

this is, we think, evidenced by his answers to the questions above quoted and by his letter of transmittal in which he says "Enclosed find individual income tax return for Mr. C. A. Jones." The fact that in his return he took the personal exemption of the head of a family and credit for dependents is not determinative of the issue. He was obliged to support his minor children even though living apart from his wife and he may have regarded himself as head of the family and entitled to the full exemption, even though he was not so entitled under the revenue laws. In such a situation, he should only be allowed the exemption to which he was entitled.

The cases cited by the respondent to the effect that petitioner had elected to file a joint return are not in point. Those cases are based on the right of a taxpayer to choose which of two legal courses he will follow and are to the effect that, having made an election and filed a joint return, he may not thereafter file a separate return for that year. That is not the case here, and we hold that petitioner's income and tax should be determined on the basis of a separate return. Cf. I.T. 2650 (C.B. XI-2, p. 101); *Gertrude H. Thompson*, 30 B.T.A. 30.

We do not, however, agree with petitioner's contention that the total net income for the taxable year should be divided equally in arriving at the amount to be reported by him. This contention, which is based on the fact that the community is dissolved on dissolution of the marriage, does not take into consideration the effect of the marriage settlement of July 28, 1927, which was affirmed by the court and held binding on the parties.

Spouses in the State of Texas may legally enter into a contract of separation if they have already separated, or have determined upon an immediate separation, and as a part of such contract may agree upon a separation of property. See Community Property, McKay, sec. 867, *et seq.* And as a part of a valid separation agreement, the spouses may dissolve the community of property. *Rains* v. *Wheeler*, 76 Tex. 390; 13 S.W. 324; *Corrigan* v. *Goss* (Tex. Civ. App.), 160 S.W. 652. In the latter case, the court said:

> It is clear that this agreement and partition deed were not intended to convey property by one spouse to another, but an equitable division in view of final separation, that is, in view of no longer acting together in the acquisition of property, which the law fixes as community, or separate, according to its manner of acquisition, but each to take in the future such property as he may acquire as his own, unincumbered by the marital relation.
>
> Hence it follows that property acquired by either spouse after separation, brought about by such an agreement, becomes the separate property of the one who acquired it, free from the claims of the other, because they are no longer, in law, acting together in their legal capacity of husband and wife. And this partition deed being valid and binding, it settled all property rights between the parties, including the homestead rights of appellant.

In our view of the case, there was no community of property between petitioner and his wife after July 28, 1927, and petitioner should include the entire income from the sale of his oil interests after that date. Cf. *Muriel Oakes Ames*, 30 B.T.A. 516. Where the husband has filed a separate return his tax should be computed by including in his gross income only his one half of the community income for the year, plus his separate income. Cf. *E. H. Stanton*, 21 B.T.A. 1380. The payment to his wife was a division of property in pursuance of the marriage settlement agreement and cannot be regarded as a distribution of income to her. As such it is not deductible from the income of the petitioner.

Petitioner claims deduction for depletion on the deferred payments from the proceeds of oil provided for in the above quoted contract. The Revenue Act of 1926, section 204 (c) (2) provides:

In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

Section 214 (a) (9) of the act provides:

In the case of mines, oil and gas wells, other natural deposits, and timber a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deduction allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

It is contended by the respondent that the transfer and assignment by petitioner and his associates of their oil and gas rights was an absolute sale and that they retained no interest in the property or its products. It is further argued that, having no interest in the property, it followed that petitioner was not entitled to depletion.

Petitioner, on the other hand, submits that, under the quoted section of the contract providing for deferred payments to be made exclusively from the proceeds of the sale of oil if, as, and when produced, he has an interest in the oil in place and it is immaterial whether the contract was a sale, lease, or an assignment. We think the petitioner's position is correct and that he is entitled to the depletion. According to the terms of the contract petitioner's interest in the deferred payments was to be paid and was paid from the proceeds of the oil. This gave him an interest in the oil.

In *Palmer* v. *Bender*, 287 U.S. 551, lessees of an oil lease sold, assigned, set over, transferred, and delivered to the Ohio Oil Co. the leased premises in consideration of a payment of a cash bonus,

a future payment to be made " out of one-half of the first oil produced and saved " to the extent of $1,000,000, and an additional " excess royalty " of one eighth of all the oil produced and saved. There, as in the instant case, it was argued on behalf of the Government that there was an absolute sale of the lease and that the assignors retained no depletable interest, but the Supreme Court held otherwise. The Court said in part:

\* \* \* The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital.

The Court further said:

Similarly, the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if, by virtue of the leasing transaction, he has retained a right to share in the oil produced. If so he has an economic interest in the oil, in place, which is depleted by production. Thus, we have recently held that the lessor is entitled to a depletion allowance on bonus and royalties, although by the local law ownership of the minerals in place passed from the lessor upon the execution of the lease. See *Burnet* v. *Harmel*, supra; *Bankers Pocahontas Coal Co.* v. *Burnet*, ante, 308.

In the present case the two partnerships acquired, by the leases to them, complete legal control of the oil in place. Even though legal ownership of it, in a technical sense, remained in their lessor, they, as lessees, nevertheless acquired an economic interest in it which represented their capital investment and was subject to depletion under the statute. *Lynch* v. *Alworth-Stephens Co.*, supra. When the two lessees transferred their operating rights to the two oil companies, whether they became technical sublessors or not, they retained, by their stipulations for royalties, an economic interest in the oil, in place, identical with that of a lessor. *Burnet* v. *Harmel, supra; Bankers Pocahontas Coal Co.* v. *Burnet, supra.* Thus, throughout their changing relationships with respect to the properties, the oil in the ground was a reservoir of capital investment of the several parties, all of whom, the original lessors, the two partnerships, and their transferees, were entitled to share in the oil produced. Production and sale of the oil would result in its depletion and also in a return of capital investment to the parties according to their respective interests. The loss or destruction of the oil at any time from the date of the leases until complete extraction would have resulted in loss to the partnerships. Such an interest is, we think, included within the meaning and purpose of the statute permitting deduction in the case of oil and gas wells of a reasonable allowance for depletion according to the peculiar conditions in each case.

Under the principles enunciated in that case it is clear that petitioner retained a right to share in the oil when produced and is entitled to a deduction for depletion on the deferred payments which he received from the proceeds of oil.

*Decision will be entered under Rule 50.*