Thelma A. Ramos v. Commissioner.
Ramos v. Commissioner
Docket No. 39551.
United States Tax Court
T.C. Memo 1955-48; 1955 Tax Ct. Memo LEXIS 290; 14 T.C.M. (CCH) 162; T.C.M. (RIA) 55048; February 28, 1955
Stuart S. Hillman, Esq., for the petitioner. John J. Burke, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: Respondent determined a deficiency in income tax and an addition to *291 tax for failure to file a return against petitioner for the calendar year 1943 in the respective amounts of $8,904.80 and $2,226.20. The issues presented are: (1) Whether the return filed by petitioner's former husband for the taxable year was a joint return, so as to preclude respondent's determination of a deficiency against petitioner by reason of the running of the statute of limitations. If the answer to this question is in the negative, then (2) whether any of the items of income, determined by respondent to be petitioner's community income, was the separate income of petitioner's former husband; (3) whether petitioner is entitled to a deduction for claimed abandonment in 1943 of certain motel buildings; and (4) if it is determined that petitioner is liable for an income tax deficiency, whether her failure to file a return was due to reasonable cause. Findings of Fact Petitioner is an individual, and resides in Los Angeles, California. During the taxable year she was married to S. Walter Riddel, who filed a return for that year with the collector of internal revenue for the sixth district of California. Petitioner filed no return herself for the taxable year. Petitioner *292 and Riddel were married in 1928. On August 1, 1928, Riddel leased certain property in Yreka, Siskiyou County, California, from petitioner's father, Walter D. Nunamaker, for the purpose of building and operating a motel court thereon. The lease was to run for a period of ten years, and under its terms, the lessee could move or rebuild the buildings then on the property, as well as make such improvements as he deemed profitable and convenient. The lease also provided that any and all improvements placed on the property by the lessee should be and remain his personal property and were to be subject to removal by him on the termination of the lease, except such improvements as lawns, trees, etc., which could not be removed without causing permanent injury to the realty. The lessee was given the first right and option to re-lease the premises, at termination of the lease, for such term and rental as might be agreeable between the parties. Riddel and petitioner immediately took possession of the property, moved the large house that was on the property from the front to the rear of the grounds, and remodeled it for their living quarters. After filling in and grading the land, they erected *293 four motel cabins and remodeled the woodshed into another unit. All the buildings were constructed of wood, with composition roofs. Each unit was furnished, and was wired for electricity. Heating stoves and gas cooking stoves were installed, and all but two of the units were equipped with toilet facilities. There was an outside laundry room which was provided with showers and toilets. There also was a building which was used as storeroom and woodshed. About 1930, Riddel and the petitioner constructed three more cabins, and then six months later built a restaurant building which also contained an apartment. These new units were also of wood construction, and had kitchen and toilet facilities. All units were provided with car ports. During the life of the lease approximately $16,000 was spent on the improvements, of which petitioner provided approximately $3,500. The only records of the business that were kept, were the guest register slips. Each slip showed the name of the guest, address, car license number, price of cabin, and other information. Riddel usually looked after all finances, including the payment of expenses. The petitioner and Riddel lived on the premises during the *294 first three or four years of the lease. They then started spending the winters in Los Angeles, and the summers in Yreka. Just prior to the termination of the lease in 1938, petitioner and Riddel moved to Los Angeles to live. They hired someone to operate the motel during their absence. During their marriage, and prior to 1937, Riddel purchased property in Los Angeles, located at 935 Venice Boulevard, which was zoned for light manufacturing business. The property was paid for by a down payment, with the balance of the purchase price in monthly payments. Petitioner considered the property community property, and on January 27, 1937, conveyed her interest in it to her husband, Walter Riddel. At some undisclosed period, and probably prior to 1941, Riddel operated a business of manufacturing steel chrome furniture on the property. After the termination of the lease on the Yreka property, a new lease was executed on September 8, 1938, with terms similar to those of the original lease, but with petitioner substituted for Riddel as lessee. This lease provided for a term of five years, from August 1, 1938. When this lease expired in 1943, it was not renewed by the parties, and neither petitioner *295 nor Riddel did anything with respect to removal or disposal of the improvements which they had constructed on the property. Petitioner had paid the prescribed rental until the termination of the lease, but during that time it was not profitable for her to operate the motel. At some subsequent date, the lessor and owner, petitioner's father, sold the property. The father died in October 1950. In the winter of 1940-1941 Riddel became engaged in a sanitation business, which petitioner understood was a partnership doing business under the name of California Sanitation Service and that Riddel's partners were Fred Winzinreid and a Mr. Bromberg. The partnership manufactured chemical toilets. Riddel's duties required him to travel at times. Riddel also received income from several sources other than the partnership. During 1941 the petitioner and Riddel separated. In the summer of 1943, Riddel purchased a residence for his family. It was located at 2006 North Bronson Avenue, Los Angeles. His family had lived in an apartment, at a rental of $37.50 a month, prior to moving to the residence. The petitioner and Riddel had one child, Mary Lou, who, during 1943, was 14 years of age. Riddel *296 had a room at the Bronson Street residence, which he used upon his return from some of his travels, and where he kept his clothes. The telephone was listed in his name and he paid the maintenance bills. He also ate some of his meals at the residence. He gave petitioner some sums of money during 1943. He also opened a bank account in the Hollywood Branch of the Bank of America, on which petitioner had the power to draw checks. At some time prior to December 1943, Riddel was involved in a lawsuit which had been instituted by his partners. He was also sued by Maud Walker in 1943. She was secretary to Riddel. Although he and petitioner were supposed to go to a club with some friends on the evening of December 31, 1943, Riddel left Los Angeles on December 27, 1943, presumably for Las Vegas, Nevada. Riddel had disposed of his interest in the California Sanitation Service partnership on November 30, 1943. On the trip to Las Vegas, Riddel wrote the following letter to his wife and daughter: "BEACON TAVERN "BARSTONW CALIFORNIA December 29, 1943 "Mamma and Mary Lou "Hello Bub's: "Well I got here at 4:00 P.M. When I left Los Angeles it rained so hard that when I got to Pomona I asked *297 the Auto Club about El Cajon Pass, and while they did not know it was supposed covered with snow, so I put up for the night. I was all in anyway, so came over here today. Glad I did, I'll leave about 10:00 A.M. tommorrow for Los [Las] Vegas. Should get in there at about 2:30. "O, yes, send all my mail, c/o Gen. Delivery, Hotel Los [Las] Vegas, and if it would not be too much trouble for Mary Lou and Pete they could pick up any mail that would be left at office 935, just forward all first class mail, keep second class. "Of course, I have not heard anything yet but I'll get some news in a few days, and I hope good. The best news and the news that will make me happy is that you both keep well and don't hate me. I am only trying to do the things I feel I am duty bound to do, but you know they will never be a slackening of my duty to you. In other words, I'll do everything for the happiness of you both, and all I ask is for you to do just a very little. "I am writing this on my knee and it slips once in a while. Write me both and send everything General Delivery. When I find out where I locate I'll let you know, also Phone number. "Love to both, Good Night "/s/ Daddy" Prior *298 to leaving Los Angeles, and on December 8, 1943, Riddel had the beneficiary of an insurance policy changed so as to provide: "Thelma A. Riddel, wife of the insured, if living, otherwise to Mary Lou Riddel, daughter of the insured." The original beneficiary had been a Mrs. Walker. Riddel told petitioner that it had been necessary to designate Mrs. Walker as beneficiary in order to secure a loan he had obtained from her. Riddel, wanting a divorce, appeared at the Bronson Street residence in February 1944, and sought petitioner's signature to certain papers pertaining to a divorce action he had brought or was about to institute in Las Vegas. He told petitioner the reason he wanted a divorce was to obtain a witness in the lawsuit with his partners; that the witness would not testify unless he divorced his wife and married her. After much insistence on his part, most of which was done in the presence of his and petitioner's daughter, petitioner signed the papers. On March 10, 1944, Riddel obtained a divorce from petitioner in Las Vegas, and it was based on "three years separation." It was recited in the decree that the defendant, petitioner herein, had filed her appearance expressly *299 waiving notice of time of trial, service of process and findings of fact and conclusions of law thereupon, and that no testimony was offered by her. No formal property settlement agreement was executed. Petitioner had been told by her husband that he would take care of her and their daughter. Petitioner was living in the Bronson Street residence on January 8, 1951, and December 21, 1951, having remarried between those dates. At some date, after obtaining the divorce, Riddel and Mrs. Walker were married. Mrs. Walker lived in her home on South Sycamore Street, Los Angeles, and during 1943 and 1944, Riddel had a room there. Riddel filed his return for the year 1943 on June 15, 1944. In the space on the return provided for "Signature of person (other than taxpayer or agent) preparing return" and "Date," were the signature "M. Hayes Hallock" and the date "6-15-44." Under the signature, on the line provided for "Name of firm or employer, if any," was stamped the name "Claude I. Parker." On the first page of the return, the taxpayer's name and address were shown as: "Walter Riddell [Riddel], 354 South Sycamore Ave., Los Angeles, 36, California." Beneath the line provided for the name *300 of taxpayer, was the instruction, "Use given names of both husband and wife, if this is a joint return." At the bottom of the page, beneath the lines provided for signatures, was the instruction, "If this is a joint return (not made by agent), it must be signed by both husband and wife. A return made by an agent must be accompanied by power of attorney." Walter Riddel's signature appears as of the date of "6-15-44." In answer to the questionnaire at the bottom of page 3 of the return, it was stated that Riddel had filed a return for the year 1942 at the collector's office for "6th Calif." No answer was given to the third question, which called for the following information: "If separate return was made for the current year, state: "(a) Name of husband and wife "(b) Personal exemption, if any, claimed thereon "(c) Collector's office to which it was sent" The return showed no occupation for Riddel, but did give his social security number. Riddel took the amount of personal exemption for a husband and wife living together, as well as credit for his dependent daughter. Petitioner's name appears nowhere in the return, nor did she sign it. She did not participate in the preparation *301 of the return, nor did she know it was filed, until Riddel told her. In his return Riddel reported income and deductions for 1943 as follows: Income
Net gain from sale or exchange of
capital assets
$ 2,766.60
Rents and royalties
160.58
Income from partnerships * * *
and other income
23,300.51
Total income
$26,227.69
Deductions
Contributions
$ 100.00
Taxes
276.82
Medical, dental, etc.,
expenses
119.36
Other deductions
17,691.18
Total deductions
18,187.36
Income tax net income
$ 8,040.33
In determining that one-half of Riddel's income and deductions was reportable by petitioner, respondent determined Riddel's income and deductions were as follows: Income
Salaries
$ 7,148.34
Dividends
9.00
Interest
232.70
Net gain from the sale or exchange
of capital assets
4,995.00
Profit from business
1,221.82
Rents and royalties
1,382.74
Other income
32,657.56
Total income
$47,647.16
Deductions
Contributions
$ 100.00
Taxes
276.82
Other deductions
2,000.00
Total deductions
$ 2,376.82
Net income
$45,270.34
One-half of the above items were included by respondent in the statement *302 attached to the notice of deficiency sent to petitioner. Inter alia, it was stated: "Inasmuch as no return was filed by you for the taxable year 1943 within the time prescribed by law, 25% of the tax has been added thereto in accordance with the provisions of section 291 of the Internal Revenue Code. * * *
"It has been determined that the above income and deductions, representing your community half of items and deductions of Walter Riddel are properly reportable by you on a separate return for the taxable year ended December 31, 1943. Section 51, I.R.C." Petitioner and Riddel had been advised by respondent in prior communications as to the respective adjustments that he had made in determining the tax liability of each. Riddel had indicated to respondent his agreement to the adjustment of his tax liability. The income tax return filed by Walter Riddel for the year 1943 was his individual return. Petitioner's failure to file a return for 1943 was due to reasonable cause and not due to willful neglect. Opinion The first issue to be decided is whether the return filed by petitioner's former husband for the taxable year 1943 *303 was a joint return. During 1943, it appears that the condition, under the applicable statute [1] and regulations, [2] which gives a husband and wife the right to file a joint return, is that they were "living together at the close of the taxable year." See Sadie Corbett Hayes, 6 T.C. 914, affd., 161 Fed. (2d) 689; Chester Addison Jones, 31 B.T.A. 55, affd. per curiam, 82 Fed. (2d) 329; and Gertrude H. Thompson, 30 B.T.A. 30. *304 The first point of difference between the parties seems to be whether petitioner and her husband were separated at the close of the year with the intent to abandon their marital status. Whatever doubt there may be as to the separation of petitioner and her husband or their intention relating thereto, the question need not be labored, as we have come to the conclusion that the return filed for 1943 was the individual return of Walter Riddel, and not a joint return. As to whether the return involved was a joint return, or was Riddel's separate return, as determined by the respondent, the respondent's determination is prima facie correct and the burden of showing error on his part rests upon the petitioner. Petitioner relies on her own testimony and on the return, which was placed in evidence by respondent. Petitioner states that she had never filed a return, always relying on her husband to do so, as he earned the income and not she; that he had told her that he had filed a return for 1943; and that she was not in a position to know or secure the necessary information on which to base a return. She points to the fact that in the return filed, Riddel claimed full allowable exemption *305 for husband and wife, as well as the credit for their dependent daughter. She also argues that if any of the income reported in the return filed by Riddel included community income belonging to her, such inclusion showed the return to be a joint return. Petitioner admits that she did not participate in the preparation of the return and that she did not sign it, and has offered no evidence with respect to her having conferred with Riddel or anyone else about the return or about having had an opportunity to see the return and its contents before it was filed. There is no proof that she authorized the contents of the return, or its filing. The applicable statute and regulations permit spouses living together to elect to make a joint return. There are no facts of record that show petitioner made such an election, or that she knew Riddel had made such an election. She only knew, from what he had said, that he had filed a return. The circumstances relating to the preparation and filing of the return indicate the opposite to petitioner's contention. In the first place, the return was filed after petitioner and Riddel were divorced, the decree of divorce having been rendered March 10, 1944, and *306 the return having been filed June 15, 1944. The return directs that the names of both spouses be given and that each spouse sign it, if it is a joint return. Only Riddel's name and signature appear on the return. It is apparent that someone was employed by Riddel to prepare the return for him, as the return shows on its face that it was prepared by a representative of "Claude I. Parker." The record does not reveal the nature of the business of Claude I. Parker, but, as stated by the United States Court of Appeals for the Third Circuit, in its opinion in McCord v. Granger, 201 Fed. (2d) 103, 106, the inference is permissible that Claude I. Parker was a company or firm "with some knowledge of tax laws and had they been advised or thought that the return was intended to be joint would have required * * * [Riddel] to have his wife sign it in compliance with the provisions of the return itself as well as the applicable Treasury Regulations." Petitioner states that Riddel showed he intended the return to be joint by taking the husband and wife exemption, as well as the credit for their dependent daughter. Under the regulations [3] applicable in 1943, there was but one personal *307 exemption for husband and wife living together, but if they made separate returns, "each may claim one-half of the personal exemption, or such exemption may, in accordance with an agreement entered into by them, be taken by either or divided between them in any proportion." The taking of the exemption and the credit is not determinative of the issue. Riddel was obligated to support his minor daughter even if he were living apart from his wife, and having supplied that support, he would be entitled to the credit therefor. Petitioner presses particularly the contention that Riddel included her community income with his in the return and that under the authorities of this and other courts, and especially in the case where only one spouse earned income, as in petitioner's case, the return filed was a joint return. Some of the cases appear, at first glance, to support that contention, but they are distinguishable because of their own peculiar facts or because the then applicable law is not now applicable. Those cases that related to situations which arose prior to the promulgation, for the first *308 time, on January 2, 1935, of Treasury Regulations requiring signatures of both spouses to a joint tax return are not applicable. McCord v. Granger, supra.
In the later cases, where the returns were held to be joint, the return either was filed by the taxpayer with that intention, or such intention was shown by the contents of the return and the circumstances pertaining to the return and the spouses. The circumstances that Riddel included in the return income belonging to petitioner does not establish per se that he filed a joint return. McCord v. Granger, supra. It is to be noted that Riddel not only failed to report all income earned or accrued, but treated the income reported as his own. It may be that because of his marital status he was under the erroneous belief that the income earned, as reported, was all his and that there was no community income. The fact that he was in error would not make the return a joint return. Further, the amount of income shown on the return bears little resemblance to the correct amount of income which was properly reportable in a joint return. This is evidenced by the large amount of additional income as determined *309 by the respondent and which is not contested by petitioner. After carefully considering all of the evidence before us, we conclude and hold that the return filed by Riddel for the year 1943 was his individual return, and not the joint return of petitioner and him. The next issue relates to whether any of the items of income, determined by respondent to be petitioner's income, was the separate income of petitioner's former husband, who in fact earned the income. As heretofore indicated, the correctness of the full amount of income determined by respondent is not contested. Living in California, a community property state, petitioner, in 1943, had a present, existing and equal interest in the community property. Civil Code of California, Sections 161a, 164. In her amended petition, and also on brief, she admits that $3,574.17 constitutes community property. The income in excess of that amount, she argues, was Riddel's separate income. The $3,574.17 represents one-half of the amount Riddel received as salary from the partnership business, the California Sanitation Service, plus $933.34 received as a bankruptcy receiver's fees, none of which was reported in his income tax return. *310 About the only items of income to which petitioner has directed any proof that they were not community income, are the rentals from the Venice Boulevard business property and the income from the partnership business in excess of salary. The rentals in the amount of $691.37 charged to petitioner represents one-half of the rentals Riddel received from two properties, one located on Venice Boulevard, Los Angeles, and the other on Newby Street, Glendale. We have found as a fact that petitioner in 1937 conveyed to Riddel her community interest in the Venice Boulevard property. That property thus became the separate property of Riddel and the income he received therefrom was his separate income. Petitioner is not taxable on any of that income. Petitioner offers no proof and makes no contention with respect to the rentals from the Glendale property, and for failure to show that such rentals were other than community property, respondent's determination with respect thereto is sustained. Petitioner does contend that the income derived from the partnership business in excess of Riddel's salary is not community income, as the California statute provides that "A partner's right in specific *311 partnership property * * * is not community property." California Corporations Code, Sec. 15025, formerly Civil Code of California, Sec. 2419. She argues that the income from such property, therefore, is not community income, but is Riddel's separate property income. Whether the income received from a partnership business is separate or community income depends upon the character of the property invested in such business. If the investment consisted of community property, the income nevertheless is community income. If separate property is invested, the income therefrom, excluding compensation received for personal services, is separate income. If the investment consists of both, the amount drawn by the partner for services and his profits attributable to the community investment are divisible community income and the profits attributable to the remainder of the investment are taxable to the individual partner. George W. Van Vorst, 7 T.C. 826; see Clara B. Parker, 31 B.T.A. 644. There seems to be a distinction between property right in specific partnership assets and property interest in capital investment in the partnership which may consist of either community *312 or separate property or both. In the instant case the record does not reveal the nature of the funds or property with which the partnership interest was acquired, nor does it reveal any division of Riddel's partnership assets between separate and community investment. Respondent has determined that Riddel's profits from the partnership constituted community income, and there is not sufficient evidence, in fact, there is no evidence of record, to overcome the presumption of correctness of his determination. As to those items of income such as dividends, interest, profits from other business, capital gains, and profits from Riddel's own chemical toilet business, taxed to petitioner, petitioner has offered no proof that they are not community income. With respect to them, respondent's determination is sustained. The third issue relates to a claimed loss deduction for alleged abandonment of the improvements constructed on the leased Yreka property in connection with the motel operation. In order to be entitled to such a deduction, there are several requirements that must be met. Petitioner must establish that there was an abandonment, during the taxable year, of property that belonged *313 to her; the amount of the loss, based on a determination in accordance with the applicable statute and regulations, with adjustments having been made for depreciation allowed or allowable; and the property belonging to her that was removable, within the provisions of the lease, and the portion of adjusted cost attributable thereto. Petitioner estimated that the total cost of all improvements made during the life of the lease was $16,000. There is no breakdown of that amount in relation to new buildings, remodeling of old buildings, grading and filling of land or other improvements. The bulk of the expenditures were no doubt made on the original improvements. Two or three years later, probably a substantial amount was expended for three more cabins and the restaurant-apartment building, but there is no proof as to the amount of expenditures made in either instance. We are not advised as to whether the expenditures were from community funds or from the separate funds of each spouse. Petitioner and Riddel had been married only a short time before the original lease was executed by him, as lessee, and the first expenditures that were made. There is no showing that any material improvements *314 were made on the property during petitioner's tenure as lessee. Petitioner stated that she had invested about $3,500 of her own money, leaving the inference that her husband had invested funds of his own in the initial expenditures. And it is possible that the improvements made two years later were made with some community funds. There is no proof as to petitioner's actual interest in the improvements either as to her separate or her community property. Petitioner has offered no evidence with respect to the cost of the removable buildings, the amount recovered or recoverable through depreciation or even the estimated value of such property at the date the lease expired. She had not shown what improvements were removable within the provisions of the lease. Neither petitioner nor Riddel took any action prior to, at, or after the termination of the lease with respect to the disposal or the removal of the property permissible to be removed under the lease. Petitioner's father owned the land on which the improvements had been made, and there might be an inference that relinquishment of the property to him was intended as a gift. For failure to show what property she abandoned, if *315 any, or to show any loss suffered because of abandonment, petitioner's claim for a loss deduction because of abandonment must be denied. The final question is whether petitioner is liable for the 25 per cent addition to tax for failure to file a return. Petitioner contends that the failure to do so was due to reasonable cause, and not to willful neglect. After considering all of the evidence of record, we have concluded and held that petitioner's failure to file a return for the taxable year 1943 was due to reasonable cause, and not due to willful neglect. The respondent's determination of the addition to tax is accordingly rejected. Decision will be entered under Rule 50. Footnotes
1. INTERNAL REVENUE CODE OF 1939: Sec. 51(b)↩. Husband and Wife. - In the case of a husband and wife living together the income of each (even though one has no gross income) may be included in a single return made by them jointly, in which case the tax shall be computed on the aggregate income, and the liability with respect to the tax shall be joint and several. * * * 2. REGULATIONS 111 Sec. 29.51-1(b) Joint returns. - A husband and wife, if living together at the close of the taxable year, may elect to make a joint return (see section 51(b)), that is, to include in a single return made by them jointly the income and deductions of each, even though one has no gross income. In such a case, the tax shall be computed on the aggregate income. The liability with respect to the tax shall be joint and several. * * * A joint return of a husband and wife * * * shall be signed by both spouses. An oath is not necessary, but both spouses shall verify the return as provided in section 51. If signed by one spouse as agent for the other, authorization for such action must accompany the return. * * * Supplement to Regulations 111, Sec. 29.51-1(b), is practically identical "for taxable years beginning prior to January 1, 1944."↩
3. Regulations 111, Sec. 29.25-3. Also Supplement to Regulations 111, Sec. 29.25-3.↩