MARIA REYES ABRAMS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Abrams v. Commissioner
Docket No. 14041-88
United States Tax Court
T.C. Memo 1989-462; 1989 Tax Ct. Memo LEXIS 462; 57 T.C.M. (CCH) 1433; T.C.M. (RIA) 89462; August 29, 1989
Maria Reyes Abrams, pro se. William Leighton, for respondent. PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION PETERSON, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, and Rules 180, 181 and 182. (All section references are to the Internal Revenue Code, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.) Respondent determined *464 a deficiency in petitioner's Federal income tax for the year 1984 in the amount of $ 9,215. Petitioner was a resident of Austin, Texas when the petition was filed. The issues to be decided are: 1. Whether petitioner must report one-half of all income earned by herself and her then spouse during 1984; 2. Whether petitioner qualifies for the filing status Head of Household; and 3. Whether petitioner is entitled to dependency exemptions for her four children. FINDINGS OF FACT Petitioner Maria Abrams (Maria) and Jerald Abrams (Jerald) were wife and husband at the beginning of the year in question and resided in Texas. They lived together until June 1984 when they permanently separated and filed a petition for divorce. On September 11, 1984, Temporary Orders (Orders) were issued by the District Court of Maverick County, Texas. The Orders provided that Jerald pay Maria $ 600 per month child support for their four children and $ 930 per month temporary support starting September 4, 1984, and on the 4th day of each succeeding month until final orders were issued. In addition, Maria and Jerald were enjoined from contacting the other party without previous consent from the *465 Court or specific consent from the other party. The Court enumerated 26 specific actions the parties were enjoined from taking. The most elucidating are as follows: 1. Intentionally communicating with the other party by telephone or in writing in vulgar, profane, obscene, or indecent language, or in a coarse or offensive manner, with intent to annoy or alarm the other party. 2. Threatening the other party, by telephone or in writing, to take unlawful action against any person, intending by this action to annoy or alarm the other party. * * * 23. Entering or remaining on the premises of the residence of the other party, except as authorized by order of this Court or with express permission from the other party. The Orders were in effect until the Final Decree of Divorce (Decree) was issued June 11, 1985. The Decree provided that Maria and Jerald "shall each be responsible for one-half of all Federal income tax liabilities of the parties from the date of marriage through December 31, 1984." During 1984, Maria was a housewife and school teacher and reported $ 11,450 adjusted gross income on her individual tax return. She used the filing status Head of Household and claimed *466 four dependency exemptions for their four children who resided with her the entire year. Jerald is an attorney and had approximately $ 65,000 of Schedule C income for the year. Respondent contends Maria should have reported, and is personally liable for, tax on one-half the total income earned by Maria and Jerald in 1984, or $ 38,004.56. Additionally, respondent contends that the Orders did not dissolve the community of marriage between Maria and Jerald. Regarding the second and third issues, respondent contends petitioner is not entitled to Head of Household filing status, and is only entitled to take two dependency exemptions. Petitioner contends that since she and her then husband were permanently separated during the year and under Orders for the last four months of 1984, she should not be liable for the tax on Jerald's income during 1984. Petitioner also contends respondent is incorrect as to her filing status and dependency exemptions. OPINION The primary issue is whether petitioner must report one-half of all income earned by petitioner and Jerald in 1984. The ultimate determination that must be made is whether the community of marriage was dissolved upon the issuance *467 of the Orders on September 7, 1984. Texas is a community property state. Tex. Fam. Code Ann. sec. 5.01 et seq. (Vernon 1975). Generally, a spouse in a community property state, such as Texas, is liable for the Federal income tax on one-half the community property share realized during the existence of the community. United States v. Mitchell, 403 U.S. 190 (1971). The Supreme Court stated: with respect to community income, as with respect to other income, federal income tax liability follows ownership. [citations omitted] In the determination of ownership, state law controls. "The state law creates legal interests but the federal statute determines when and how they shall be taxed." United States v. Mitchell, supra at 197 quoting Burnet v. Harmel, 287 U.S. 103, 110 (1932). The statutory law in Texas does not directly address the ownership rights of spouses to personal service income following a legal separation. Section 3.58 of the Family Code gives the authorization for issuance of Temporary Orders. Tex. Fam. Code Ann. sec 3.58 (Vernon 1975). Section 5.01 of the Family Code characterizes marital property *468 before and during the marriage. Tex. Fam. Code Ann. sec 5.01 (Vernon 1975). Section 5.02 adds the presumption that all property possessed by either spouse at the time of dissolution is community property. Tex. Fam. Code Ann. sec 5.02 (Vernon 1975). Additionally, section 5.42 allows a partitioning of the community property within the marital community. Tex. Fam. Code Ann. sec. 5.42 (Vernon 1975). The common law of Texas was explored by this Court in Jones v. Commissioner, 31 B.T.A. 55 (1934), affd. 82 F.2d 329 (5th Cir. 1936). In that case, we noted that "Spouses in the State of Texas may legally enter into a contract of separation if they have already separated * * * And as a part of a valid separation agreement, the spouses may dissolve the community of property." Jones v. Commissioner, supra at 59; Rains v. Wheeler, 76 Tex. 390, 13 S.W. 324 (1890); Corrigan v. Goss, 160 S.W. 652 (Tex. Civ. App. 1913). That principle was expanded when a Texas court held that a "verbal settlement of [husband and wife's] joint affairs, was valid, and, ipso facto, dissolved the community." Coburn v. Collins, 244 S.W.2d 526 (Tex. Civ. App. 1951). *469 More recently we applied this law in SoRelle v. Commissioner, 22 T.C. 459 (1954), and additionally looked to the intent of the parties as expressed in the agreement in contemplation of divorce, to determine whether the parties intended to dissolve the marital community. We held the intent of the parties was to dissolve the community and consequently the husband's personal service income was his separate income taxable entirely to him, even though earned prior to the issuance of the final divorce decree. SoRelle v. Commissioner, supra; Ketcham v. Commissioner, T.C. Memo. 1982-637. In applying the above to the facts of the case before us, we must look to the Orders and the intent of the parties to determine if the marital community was dissolved on September 7, 1984. The Orders indicate a complete breakdown of the marital community. Maria and Jerald's relationship was extremely limited regarding their behavior toward each other. They were effectively enjoined from carrying on their lives as a married couple. Although there was no specific language pertaining to future earnings of Maria and Jerald in the Orders, the intent *470 of the parties to permanently separate in all respects is clear. An indication of the intent of the parties to dissolve the community exists in the award of child support and temporary support to Maria. If the District Court and the parties had contemplated that Maria had legal ownership rights to one-half the total income earned by Maria and Jerald through December 31, 1984, it is doubtful the support payments would have been awarded Maria, since this would have given Maria legal ownership rights to 75 percent of the prorated income earned by Maria and Jerald the last four months of 1984. In addition, Jerald was ordered to make the mortgage payment and the monthly payments on eleven charge accounts starting in September, 1984. It is doubtful the District Court intended that Jerald make those payments from a 25 percent legal interest in the combined income of Jerald and Maria. Additionally, the Court ordered Jerald to prepare a sworn inventory of all separate and community property owned or claimed by the parties and all debts owed by the parties, to be filed by September 21, 1984. This points to the intent of the parties and the District Court that all property and debts earned *471 or incurred after the issuance of the Orders be separate. Respondent argues that since Maria and Jerald did not specifically partition their property according to Tex. Fam. Code Ann. sec. 5.42 (Vernon 1975), the personal service income throughout 1984 is community property. Section 5.42, however, would not apply in the present case since we are concerned only with the presence or absence of a community of marriage, not the partitioning of property within the community. Respondent argues further that because the Decree provided that Maria and Jerald were equally liable for all Federal income taxes due and owing from the date of their marriage through December 31, 1984, that should be determinate of the issue before us. However, as best stated by the Supreme Court, the income tax cannot "be escaped by anticipatory arrangements and contracts however skillfully devised * * * by which the fruits are attributed to a different tree from that on which they grew." Lucas v. Earl, 281 U.S. 111, 115 (1930). Without the community of marriage, earnings of Jerald are taxed to Jerald and cannot be contracted away. It should be noted that section 66 provides relief in some cases *472 similar to the case before us; however it is not applicable here. Section 66(a) does not apply because Maria was not living apart from Jerald for the entire year. Section 66(c) does not apply since Maria knew Jerald was an attorney and knew he earned community income during 1984. Therefore, section 66(c)(3) was not satisfied. We hold that the community of marriage was dissolved on September 7, 1984, by the issuance of the Orders. All income earned by Maria and Jerald through September 7, 1984, is community property and must be taxed 50 percent to Maria and 50 percent to Jerald. Income earned after September 7, 1984, is separate property and taxed to the individual whose efforts produced the income. The second and third issues regarding Maria's filing status and eligibility for dependency exemptions must now be determined. The total support of the household and the children is allocable evenly to both parents during the period the marital community existed. Since we held that the marital community was dissolved on September 7, 1984, we must determine if Jerald provided over one-half the support from September 7 through December 31, 1984. Maria stipulated that Jerald provided *473 over one-half the support for the children for the entire year, and the facts indicate that included over one-half the support the last four months of the year. From the record, it is clear Jerald also supplied over one-half the support for the household during that same period. Therefore, under section 2(b) Maria is not entitled to file as Head of Household. Also, under sections 151 and 152, Maria would not be allowed to take any dependency exemptions for her four children. However, under state community property law, which Maria and Jerald were subject to the majority of the year, the exemptions are split evenly between spouses. For this reason, respondent allowed Maria two dependency exemptions on the statutory notice of deficiency and did not contest it at trial. Therefore, Maria is allowed those two exemptions. Decision will be entered under Rule 155.